**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § § | |
| v. § § | Case No. H-24-cr-113 |
| MINA COLIN STROTHER § § | |
| Defendant. § | |

## PLEA AGREEMENT

The United States of America, by and through the undersigned attorneys for the United States Department of Justice, Criminal Division, Public Integrity Section; the undersigned attorneys for the United States Department of Justice, National Security Division, Counterintelligence and Export Control Section; and the Defendant, Mina Colin Strother, and Defendant's counsel, Michael McCrum, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreements

1. Defendant agrees to plead guilty to the Information. The Information charges Defendant with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 371. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment proven to a jury or a judge beyond a reasonable doubt. Defendant also waives any challenge to venue in this district.

### Punishment Range

2. The statutory maximum penalty for a violation of Title 18, United States Code, Section 371, is a term of imprisonment of not more than five years and a fine of not more than

1

$250,000 or twice the gross pecuniary gain or loss, whichever is greater. *See* 18 U.S.C. §§ 371, 3571. Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years. *See* 18 U.S.C. §§ 3559(a)(4), 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for no more than two years, without credit for time previously served on post-release supervision. *See* 18 U.S.C. §§ 3559(a)(4), 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

**Mandatory Special Assessment**

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration

2

consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this Plea Agreement carries the potential for a motion for departure under Section 5K1.1 of the United States Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, and fully cooperate with the United States. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that the term "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant—including, but not limited to, conspiring to launder proceeds of a criminal activity, namely bribery. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

   (a) Defendant agrees that this Plea Agreement binds only the United States Department of Justice, Criminal Division, Public Integrity Section; the United States Department of Justice, National Security Division, Counterintelligence and Export Control Section; and Defendant, and that it does not bind any United States Attorney or other component or unit of the Department of Justice;

   (b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

3

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) At the Government's specific request, Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, *if any*, not meet Defendant's expectations, Defendant understands that he remains bound by the terms of this Plea Agreement and that he cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal and Collateral Review

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this Plea Agreement and seek specific performance of these waivers.

8. Defendant also agrees that should the conviction following Defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-

4

barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction and not a promise; did not induce his guilty plea; and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220, 245 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated Guidelines range.

10. Defendant understands and agrees that each and all waivers contained in this Plea Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

### The United States' Agreements

11. If Defendant pleads guilty to the Information and persists in that plea through sentencing, and if the Court accepts this Plea Agreement, the United States will not further prosecute the defendant for any crimes described in the attached factual basis or for any conduct of the defendant now known to the United States Department of Justice, Criminal Division, Public Integrity Section and the United States Department of Justice, National Security Division, Counterintelligence and Export Control Section. This agreement does not provide any limitation of liability arising out of any acts of violence.

### Agreement Binding on Parties to Agreement Only

12. The United States Department of Justice, Criminal Division, Public Integrity Section and the United States Department of Justice, National Security Division, Counterintelligence and Export Control Section agree that they will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the Information. This plea agreement binds only the United States Department of Justice, Criminal Division, Public Integrity Section; the United States Department of Justice, National Security Division, Counterintelligence and Export Control Section; and Defendant. It does not bind any United States Attorney or any other component of the Department of Justice. The United States Department of Justice, Criminal Division, Public Integrity Section and the United States Department of Justice, National Security Division, Counterintelligence and Export Control Section will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

13. The United States reserves the right to carry out its responsibilities under the

Sentencing Guidelines. Specifically, the United States reserves the right to:

    (a)    Bring its version of the facts of this case, including any evidence in the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

    (b)    Set forth or dispute sentencing factors or facts material to sentencing;

    (c)    Seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

    (d)    File a pleading relating to these issues, in accordance with Section 6A1.2 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

    (e)    Appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

14.    Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

15.    The United States and Defendant agree to the following regarding the Sentencing Guidelines applicable to Defendant's Guidelines range:

    (a)    The Sentencing Guidelines do not bind the Court and are advisory in nature.

7

        The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable."

  (b)    The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay.

  (c)    The defendant understands and agrees that the factual admissions contained in paragraphs 18-33 of this plea agreement, and any admissions that he will make during his plea colloquy, will be used to calculate the defendant's Guidelines range.

  (d)    If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

  (e)    The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 15 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

16.    The United States and Defendant agree that the United States or Defendant may assert at sentencing and recommend to the Probation Office that Guideline enhancements or adjustments beyond the Guidelines set forth above do or do not apply.

### Rights at Trial

17.    Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that the rights of a defendant

8

include the following:

    (a)    If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agree.

    (b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses, and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

    (c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. But if Defendant desired to do so, he could testify on his own behalf.

    (d)    As part of this plea agreement, and based upon the concessions of the United States in this plea agreement, Defendant knowingly, willingly, and voluntarily gives up the right to seek any additional discovery. Further, Defendant knowingly, willingly, and voluntarily waives all pending requests for discovery.

### Factual Basis for Guilty Plea

18. Defendant MINA COLIN STROTHER was a resident of Buda, Texas. He owned and operated Strother & Company, a political consulting company based in Buda, Texas. He was Co-Conspirator 1's campaign manager and former chief of staff.

19. Co-Conspirator 1 is an elected, federal public official who meets the definition of 18 U.S.C. § 201(a)(1).

20. Co-Conspirator 2 is the spouse of Co-Conspirator 1. Co-Conspirator 2 owned and controlled Consulting Company 1, a limited liability company formed under the laws of the State of Texas.

21. Co-Conspirator 3 was a businessman residing in San Antonio, Texas and a close

associate of Co-Conspirator 1. Since approximately 2006, Co-Conspirator 3 owned and operated two consulting companies, Consulting Company 2, and Consulting Company 3.

22. In February 2016, Co-Conspirator 1 approached Strother and asked him to meet with Co-Conspirator 3. On February 25, 2016, Strother and Co-Conspirator 3 met at a restaurant in San Antonio, Texas. Co-Conspirator 3 asked Strother to participate in a project to test and certify a fuel additive made by a Mexican company, Lubricant Company 1, so that it could be sold in the United States. Co-Conspirator 3 stated he would pay Strother $11,000 per month, but these payments were conditioned on Strother making $10,000 monthly payments to Co-Conspirator 2. Neither Strother nor Co-Conspirator 2 had any experience or expertise relating to the testing, certification, or marketing of fuel additives.

23. On February 27, 2016, Co-Conspirator 3 emailed Strother with the subject line, "Temporary MOU." In the email, Co-Conspirator 3 stated that his company, Consulting Company 2, was "interested in retaining your consulting services for fundraising, tracking and negotiating lab testing services and market analysis of the many [Lubricant Company 1] products." Co-Conspirator 3 asked Strother to invoice Consulting Company 2 for "an initial payment of $22,000." The email did not reference any payments to be made to Co-Conspirator 2.

24. From March 2016 through December 2017, Co-Conspirator 3 made payments of $11,000 to Strother on an approximately monthly basis, totaling $242,000. Pursuant to his agreement with Co-Conspirator 3, from March 2016 through January 2018, Strother used the funds he received from Co-Conspirator 3 to make payments of approximately $10,000 per month to Co-Conspirator 2, totaling $214,890.

25. In the period in which Strother was making monthly payments to Co-Conspirator 2, Co-Conspirator 1 messaged Strother words to the effect of, "[Co-Conspirator 2's initials]

asking." Strother understood this message to mean that Co-Conspirator 1 was inquiring about the status of the payments being made to his spouse, Co-Conspirator 2.

26. When Co-Conspirator 3 first approached Strother and began making payments, Strother believed that the Lubricant Company 1 project was legitimate. At the beginning, Strother made some efforts to advance the project. However, neither Co-Conspirator 3 nor Co-Conspirator 2 performed any legitimate work on the project. Eventually, Strother stopped making any efforts to advance the project.

27. Based on these circumstances, where Co-Conspirator 3 continued to pay Strother $11,000 on an approximately monthly basis, and where Strother continued to pay Co-Conspirator 2 $10,000 on an approximately monthly basis, and neither Co-Conspirator 3 nor Co-Conspirator 2 did any legitimate work, Strother concluded that the Lubricant Company 1 project was a sham. Strother understood that the true purpose of the payments that he received from Co-Conspirator 3 and passed through to Co-Conspirator 2 was to funnel money to Co-Conspirator 1 without Co-Conspirator 1 having to disclose it in his publicly filed annual financial disclosures. Although he understood that the project was a sham, Strother continued to receive payments from Co-Conspirator 3 and pass them on to Co-Conspirator 2, retaining approximately $1,000 per month for himself. Strother was not aware of Co-Conspirator 2 ever doing legitimate work in exchange for the payments, in relation to the Lubricant Company 1 project or otherwise.

28. During the entire time STROTHER received payments from Co-Conspirator 3 and funneled them to Co-Conspirator 1 through Co-Conspirator 2, STROTHER did not explicitly discuss any official acts that Co-Conspirator 1 performed in exchange for the payments. However, based on the entirety of the circumstances presented to STROTHER, STROTHER understood that the funds Co-Conspirator 1 received from Co-Conspirator 3, funneled through STROTHER, were

obtained through unlawful activity, namely, bribery. Specifically, STROTHER understood that: (a) Co-Conspirator 1 organized and directed the payment scheme by which STROTHER funneled money to Co-Conspirator 1 through Co-Conspirator 2; (b) Co-Conspirator 3 concocted a sham cover story for the payments involving the Lubricant Company 1 project; (c) neither Co-Conspirator 2, Co-Conspirator 3, nor STROTHER performed legitimate work that would justify the payments; and (d) Co-Conspirator 1 was a public official with the ability to effect U.S. regulatory issues through official action. In light of these circumstances, among others, STROTHER understood that the payments he funneled from Co-Conspirator 3 to Co-Conspirator 1 were made to conceal the true nature, ownership, and source of the payments, which STROTHER understood were obtained through some form of unlawful activity, namely bribery.

29. Co-Conspirator 3 made his final monthly payment of $11,000 to Strother in December 2017, after which the regular payments stopped. In March 2018, Co-Conspirator 3 made two additional payments to Strother in furtherance of their original agreement in the amounts of $7,000 and $5,000, respectively.

30. In October 2018, Strother, Co-Conspirator 1, and others had dinner at a restaurant in Laredo, Texas. After dinner, Co-Conspirator 1 and Strother had a brief conversation in the restaurant's parking lot. During the conversation, Strother and Co-Conspirator 1 discussed the payments to Co-Conspirator 2 and the fact that Co-Conspirator 2 had accused Strother of withholding payments that he owed to Co-Conspirator 2. In response to that accusation, Strother showed Co-Conspirator 1 a spreadsheet of the payments he had made to Co-Conspirator 2 on his phone, and Co-Conspirator 1 assured Strother that there was no problem. On November 15, 2018, and December 14, 2018, Strother made payments of $7,500 each to Co-Conspirator 2 in furtherance of Strother's agreement with Co-Conspirator 1 and Co-Conspirator 3.

31. On June 11, 2019, and in furtherance of their prior agreement, Co-Conspirator 3 paid Strother $7,000 by check. On June 13, 2019, Strother used the funds received from Co-Conspirator 3 to pay Co-Conspirator 2 $3,000 by check. Subsequently, Co-Conspirator 3 directed Strother to pay Co-Conspirator 2 the remainder of the money. On December 2, 2019, Strother made a $3,500 cash deposit into Co-Conspirator 2's bank account and kept the remaining $500 of the funds he had received from Co-Conspirator 3.

32. In total, Consulting Company 2 and Consulting Company 3 paid $261,000 to Strother, as detailed below:

| Date | Method | Amount | Check or Wire Memo Line |
|---|---|---|---|
| 3/24/2016 | Check | $22,000 | "[Lubricant Company 1] Consulting" |
| 4/8/2016 | Check | $11,000 | "Monthly Consulting Fee" |
| 6/3/2016 | Check | $11,000 | "March Services" |
| 6/3/2016 | Check | $11,000 | "April Services" |
| 7/14/2016 | Check | $11,000 | "June [Lubricant Company 1]" |
| 8/8/2016 | Check | $11,000 | "July Payment [Lubricant Company 1] Project" |
| 9/14/2016 | Check | $11,000 | "August" |
| 10/20/2016 | Check | $11,000 | "Consulting [Lubricant Company 1] Sept" |
| 12/8/2016 | Check | $11,000 | "Nov" |
| 12/20/2016 | Check | $11,000 | "Dec Invoice Consulting" |
| 2/13/2017 | Check | $11,000 | "Jan Payment per Contract" |
| 3/20/2017 | Check | $11,000 | "Feb Payment" |
| 4/17/2017 | Check | $11,000 | "March" |
| 5/29/2017 | Check | $11,000 | "Apr. Payment" |
| 6/28/2017 | Check | $11,000 | "May" |
| 8/7/2017 | Check | $11,000 | "June" |
| 9/7/2017 | Check | $11,000 | "July 2017" |
| 9/22/2017 | Check | $11,000 | "Aug" |
| 10/16/2017 | Check | $11,000 | "Sept" |
| 12/15/2017 | Check | $11,000 | "Nov" |
| 12/27/2017 | Check | $11,000 | "Dec" |

| Date | Method | Amount | |
|---|---|---|---|
| 3/20/2018 | Check | $7,000 | "Jan (Petro project)" |
| 3/26/2018 | Check | $5,000 | "Jan Final – Lubricant Project" |
| 6/11/2019 | Check | $7,000 | "Consult" |
| TOTAL | | $261,000 | |

33. Of the funds Strother received from Co-Conspirator 3, Strother paid $236,390 to Co-Conspirator 2's company, Consulting Company 1, as detailed below:

| Date | Method | Amount | Check or Wire Memo Line |
|---|---|---|---|
| 3/29/2016 | Check | $10,000 | January Payment |
| 3/29/2016 | Check | $10,000 | Fedruary [sic] Payment |
| 4/22/2016 | Wire | $9,990 | --NONE-- |
| 6/8/2016 | Wire | $19,990 | April/May Invoice |
| 7/20/2016 | Wire | $10,000 | June Invoice |
| 9/1/2016 | Wire | $10,000 | --NONE-- |
| 9/26/2016 | Wire | $10,000 | --NONE-- |
| 11/1/2016 | Wire | $10,000 | Sept. Payment |
| 12/27/2016 | Wire | $19,970 | --NONE-- |
| 3/7/2017 | Wire | $9,990 | --NONE-- |
| 4/4/2017 | Wire | $10,000 | --NONE-- |
| 5/20/2017 | Check | $10,000 | --NONE-- |
| 6/21/2017 | Wire | $9,950 | April Payment |
| 7/26/2017 | Check | $10,000 | June Payment |
| 9/1/2017 | Wire | $10,000 | June Payment |
| 11/1/2017 | Check | $15,000 | August and September |
| 12/29/2017 | Check | $10,000 | November |
| 1/25/2018 | Check | $20,000 | November & December Fee |
| 11/15/2018 | Check | $7,500 | 2018 Half Balance |
| 12/14/2018 | Check | $7,500 | Final 2018 |
| 6/13/2019 | Check | $3,000 | Retainer |
| 12/2/2019 | Cash | $3,500 | --NONE-- |
| TOTAL | | $236,390 | |

34. Strother received the payments from Co-Conspirator 3 and made these payments to Consulting Company 1 in order to conceal that the true, intended recipient of the money was Co-Conspirator 1. Strother did so with the understanding that the funds Co-Conspirator 1 received

14

from Co-Conspirator 3, funneled through STROTHER, were obtained through unlawful activity, namely, bribery.

## Breach of Plea Agreement

35. If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this Plea Agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

## Monetary Penalties, Assets and Financial Disclosures

36. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to Defendant may be applied to federal debts.

37. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

15

## Restitution

38.     Defendant agrees to pay full restitution to the victims regardless of the count of conviction. Defendant agrees to pay full restitution as determined by the Court, regardless of the resulting loss amount, to all victims harmed by Defendant's "relevant conduct," as defined by U.S.S.G. §1B1.3, including conduct pertaining to any dismissed counts or uncharged conduct, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

## Forfeiture

39.     As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, a money judgment in the amount of $24,610.

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that Defendant obtained at least $24,610 from the criminal offense, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that Defendant agrees to the imposition of a money judgment in that amount;

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

## Financial Statement

40.     Defendant agrees to truthfully complete under penalty of perjury, within thirty days

of the filing of this Plea Agreement with the Court, a financial statement on a form provided by the United States and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States.

41. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

42. This written Plea Agreement, consisting of 20 pages, including the Plea Agreement Addendum, constitutes the complete agreement between the United States, Defendant, and his counsel. No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

43. Any modification of this Plea Agreement must be in writing and signed by all parties.

17

Filed at ___Houston___, Texas, on ___MARCH 5___, 2024.

_____
Defendant

Subscribed and sworn to before me on ___March 5___, 2023.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

JENNIFER KENNEDY GELLIE
Executive Deputy Chief,
    performing the duties of Chief
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice

By: _____
Garrett Coyle
Trial Attorney

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By: _____
Marco A. Palmieri
Rosaleen O'Gara
Celia Choy
Attorneys for the United States

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. H-24-cr-113 |
| MINA COLIN STROTHER, | § § | |
| Defendant. | § | |

## PLEA AGREEMENT ADDENDUM

I have fully explained to Defendant his rights with respect to the Information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to Defendant the provisions of those Guidelines that may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory, and the Court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

_/s/ Michael McCrum_                                                       MARCH 5, 2024
Michael McCrum                                                                Date
Attorney for Defendant

MCS GC ~~Superseding Indictment~~ Information

I have consulted with my attorney and fully understand all my rights with respect to the ~~Superseding Indictment~~ Information against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual that may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Plea Agreement, and I voluntarily agree to its terms.

_Mina Colin Strother_  03/05/2024
Mina Colin Strother          Date
Defendant

20